UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEXRF Corp., a Nevada Corporation<br><br>Plaintiff,<br><br>v.<br><br>DoubleU Games Co., Ltd., DoubleDown Interactive Co., Ltd., and DoubleDown Interactive, LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff NEXRF Corp. ("NEXRF"), a Nevada Limited Liability Company ("Plaintiff") files this Complaint for damages, injunctive relief and demand for a jury trial against DoubleU Games Co., Ltd., DoubleDown Interactive Co., Ltd., and DoubleDown Interactive, LLC (collectively "Defendants"), and alleges as follows:

## **NATURE OF THE CASE**

1. NEXRF brings this action against Defendants for infringement of U.S. Patent Nos. 8,747,229 (the '229 patent), 8,506,406 (the '406 patent), and 9,646,454 (the '454 patent (collectively, the "patents in suit").

COMPLAINT - 1

Folio Law Group PLLC
14512 Edgewater Lane NE
Lake Forest Park, WA 98155
206-512-9051

**BACKGROUND**

2. The casino gaming industry has sought to create and encourage new ways for patrons to gamble on casino games. While many patrons enjoyed the experience of playing a real slot machine in front of them, many potential gaming patrons were underserved.

3. One area of interest to the casino industry was remote gaming, where a patron could play a casino game while not physically sitting in front of and interacting with a typical casino gaming device. Examples of prior art devices included systems where a patron would use a handheld device to "play" a casino game by causing a remotely located but otherwise typical slot machine to spin, and the information about the game outcome and the winnings would be communicated to the player through the handheld device. These devices were flawed. For example, they did not have a strict correlation between the actual game outcome and what the player was shown, and additionally required the operation of a physical slot machine as an input.

4. The patents in suit disclose various systems and methods for embodiments of a fully remote, multiplayer capable, secure, and engaging casino-style gaming system. This novel design departed from prior art systems in that it, among other advancements, provided for streamlined media delivery for increased engagement with less resources, increased security to reduce unauthorized use, multiplayer extensibility with improved scaling and reliability, and a flexible infrastructure that could accommodate gambling or social gaming and different types of games.

5. The inventive concepts of the patents in suit were unconventional. At the time of the patents in suit, it was not well-understood, conventional, or routine to have, among other distinctions: 1) a central gaming server that determined game outcome, associated that game outcome with an image ID, and transmitted that image/video and game outcome to a remote device; 2) a verification server coupled with a central gaming server to control access to gaming activities; and, 3) an image and/or video delivery component that included relatively fast memory to store and communicate media associated with recently generated game outcomes. These unconventional centralized server-based elements allowed for a stable, secure, flexible, engaging

COMPLAINT - 2

multiplayer-compatible online gaming experience for the user while minimizing the hardware, storage, and network burdens and requirements on the user's device.  This combination of desirable qualities was absent in prior art gaming systems, and providing popular features such as progressive jackpots was made simpler and more flexible by the system of the patents in suit.

6. The '229 patent contains the additional unconventional element of a paytable module associated with the centralized gaming server, which allowed further advantages such as the ability to change game outcome distributions and rewards for all connected devices with any software updates on the device.

7. These are just exemplary reasons why the claimed inventions of the patents in suit were not well-understood, routine, or conventional.

8. The value and unconventional nature of the claimed inventions of the patents in suit are further demonstrated by the fact that, despite being described nearly twenty years ago, it is only in the last few years that online mobile gambling and social casino gaming have become wide-spread.  In those short recent years, however, both mobile casino gambling and social casino gaming have become massive, multi-billion dollar industries.

**PARTIES**

9. NEXRF Corp. is a Nevada corporation with a principal place of business at 9190 Double Diamond Pkwy, Reno, NV 89521.

10. Defendant DoubleU Games Co., Ltd. ("DUG") is a corporation incorporated and existing under the laws of Korea, with its principal place of business at 16F Gangnam Finance Center, 152, Teheran-ro Gangnam-gu, Seoul 06236, Republic of Korea.  DUG conducts business throughout Washington and the United States.

11. Defendant DoubleDown Interactive Co., Ltd. ("DDI") is a limited company incorporated and existing under the laws of Korea, with its principal place of business at 13F Gangnam Finance Center, 152, Teheran-ro Gangnam-gu, Seoul 06236, Republic of Korea. DDI conducts business throughout Washington and the United States.

COMPLAINT - 3

12. Defendant DoubleDown Interactive, LLC ("DDI-US") is a limited liability company incorporated and existing under the laws of Washington, with its principal place of business at 605 5th Avenue, Suite 300, Seattle, WA 98104. DDI-US conducts business throughout Washington and the United States.

**JURISDICTION AND VENUE**

13. This is a civil action seeking damages and injunctive relief for patent infringement under the patent laws of the United States, Title 35 of the United States Code. This Court has exclusive subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a).

14. This Court has personal jurisdiction over DUG. DUG directly and through its agents regularly does, solicits, and transacts business in the state of Washington, including making available the Accused Games (defined below) and related conduct and transactions with its subsidiaries and co-defendants DDI and DDI-US. Those acts have caused and continue to cause injury to NEXRF.

15. In the alternative, personal jurisdiction over DUG is proper pursuant to Fed. R. Civ. P. 4(k)(2).

16. This Court has personal jurisdiction over DDI. DDI directly and through its agents regularly does, solicits, and transacts business in the State of Washington, including making available the Accused Games and related conduct and transactions with its subsidiary and co-defendant DDI-US. Those acts have caused and continue to cause injury to NEXRF.

17. In the alternative, personal jurisdiction over DDI is proper pursuant to Fed. R. Civ. P. 4(k)(2).

18. This Court has personal jurisdiction over defendant DDI-US. DDI-US has its principal place of business in Washington, and directly and through its agents regularly does, solicits, and transacts business in the State of Washington. Those acts have caused injury to NEXRF.

COMPLAINT - 4

19. Venue is proper in this District under 28 U.S.C. Sections 1391 and 1400(b). DUG and DDI are foreign corporations, and DDI-US is a resident of Washington with a regular and established place of business in this District. Defendants have also committed acts of infringement in this district by selling, using, and/or offering for sale the Accused Games in this District.

## JOINDER

20. In 2016, DUG acquired controlling interest in DDI (then known as The8Games Co., Ltd.). In 2017, DUG acquired the remaining interest in DDI. In 2019, DDI changed its name to its current name.

21. In 2017, DUG, through its subsidiary DDI, purchased DDI-US from International Game Technology, and has since owned and operated DDI-US in Washington.

22. DUG currently offers at least three social casino games that infringe the patents in suit: Vegas Slots, Take5 Casino, and Hello Vegas Slots. DDI and DDI-US currently offer at least four social casino games that infringe the patents in suit DoubleDown Casino, DoubleDown Fort Knox, DoubleDown Classic, and Ellen's Road to Riches. Collectively, these seven games are representative of the "Accused Games," which includes the listed games and any other online social casino slot game made available by one or more Defendant.

23. Defendants' corporate relationship and operation of the Accused Games means that the use of those same games amounts to a single transaction or occurrence as between Defendants. Defendants have been and are acting in concert, and are liable jointly, severally, or otherwise for a right to relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the infringing products in this District. This action involves questions of law and fact that are common to all Defendants.

24. Joinder of all Defendants is proper under 35 U.S.C. Section 299(a)(1) & (2).

## DEFENDANTS' INFRINGEMENT OF NEXRF'S INTELLECTUAL PROPERTY

25. The recent ubiquity of internet-connected personal devices combined with the

COMPLAINT - 5

Folio Law Group PLLC
14512 Edgewater Lane NE
Lake Forest Park, WA 98155
206-512-9051

unprecedented consequences of the current global pandemic have created a perfect storm for online social gaming.

26. Despite the name, "free-to-play" social casino games are enormously lucrative. While the download of the game is free, thousands of "in-app" items range in price from a few cents to hundreds of dollars. These in-app purchases are often subject to heavy discounts in flash sales and are constantly presented to the player. Defendants alone generated $273 million in revenue in 2019.[1] Total revenue for the social casino market are projected to be approximately $6 billion in 2020.[2]

27. Defendants are some of the leading social casino game publishers. For example, DDI claims over 100,000,000 installations of its four Accused Games.[3] DDI also claims to have approximately 3,000,000 players each month.[4] The use, operation, and distribution of Accused Games is consistent and the game DoubleDown Casino is representative. Further, the "Accused Games" term includes the game application and the infrastructure necessary to operate the game, such as game servers.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,747,229

**(Against all Defendants)**

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. U.S. Patent No. 8,747,229, titled "Gaming System Network and Method for Delivering Gaming Media," was duly and lawfully issued by the United States Patent and Trademark Office on June 10, 2014. A true and correct copy of the '229 patent is attached as Exhibit 1.

30. NEXRF is the owner by assignment of all rights, title, and interest in the '229

---

[1] Exhibit 4, DDI Form F-1A Registration Statement https://www.sec.gov/Archives/edgar/data/1799567/000119312520172491/d753829df1a.htm.
[2] *No slots, no problem: Social gaming steps in to fill the empty space*, CDC Gaming Reports, https://www.cdcgamingreports.com/commentaries/no-slots-no-problem-social-gaming-steps-in-to-fill-the-empty-space/ (last visited 12/20/2020).
[3] Ex. 4 at 1, https://www.sec.gov/Archives/edgar/data/1799567/000119312520172491/d753829df1a.htm.
[4] Ex. 4 at 1, https://www.sec.gov/Archives/edgar/data/1799567/000119312520172491/d753829df1a.htm.

COMPLAINT - 6

Folio Law Group PLLC
14512 Edgewater Lane NE
Lake Forest Park, WA 98155
206-512-9051

1. patent, including the right to bring this suit for past and future damages and/or injunctive relief.

31. The '229 patent is valid and enforceable.

32. Defendants infringe one or more claims of the '229 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '229 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Games in violation of 35 U.S.C. Section 271(a)-(b). The Accused Games satisfy all limitations of the asserted claims of the '229 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

33. Defendants had actual knowledge of the '229 patent or were willfully blind to its existence and their infringement no later than the filing of this action. Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

34. Defendants directly infringe the asserted claims of the '229 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a). Claim 1 of the '229 patent is exemplary and recites:

> 1. A gaming server system configured to communicate with at least one network access device communicatively coupled to a network, the gaming server system comprising:
> a verification system configured to access a registration database having a plurality of registration data associated with each registered user;
> a memory module configured to store a plurality of images corresponding to at least one game outcome that are communicated to the at least one network access device;
> a centralized gaming server communicatively coupled to each of the at least one network access device, the centralized gaming server configured to generate at least one random game outcome by random generation at the centralized gaming server;
> a paytable module associated with the centralized gaming server, the paytable module configured to determine one or more prizes associated with a game outcome; and
> the centralized gaming server configured to access the memory module and communicate the plurality of images corresponding to the at least one random game outcome to the at least one network access device.

35. Defendants infringe claim 1 for at least the following reasons:

36. To the extent the preamble is limiting, the Accused Games comprise a gaming

COMPLAINT - 7

server system configured to communicate with at least one network access device communicatively coupled to a network.

37. On information and belief, the Accused Games include a verification system configured to access a registration database having a plurality of registration data associated with each registered user. The Accused Games allow and/or require a user to register for a user account, which includes the transmission of registration that may include the player's name, user name, password, Facebook account, and/or other registration data. The user registration data is stored in a database in a verification system such that the registration data is associated with the registered user.

38. On information and belief, the Accused Games include a memory configured to store a plurality of images corresponding to at least one game outcome that are communicated to the at least one network access device. For example, the Accused Games display celebration graphics and text and/or the display of the slot machine reels when the player achieves certain winning outcomes, such as a winning slot machine spin. At least some of those images are transmitted to the user device over normal internet protocols after the particular game is installed.

39. On information and belief, the Accused Games include a centralized gaming server communicatively coupled to each of the at least one network access device, the centralized gaming server configured to generate at least one random game outcome by random generation at the centralized gaming server. For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes for players playing the game. These game outcomes are generated using a random number generator ("RNG").

40. On information and belief, the Accused Games include a paytable module associated with the centralized gaming server, the paytable module configured to determine one or more prizes associated with a game outcome. For example, each slot skin playable on an Accused Game has a paytable, and those paytables can often be displayed to the user if the user

performs certain commands. These paytables comprise a matrix of game outcomes, such as slot reel positions, and the resulting prize, such as a multiple of a bet, a jackpot, free spins, a bonus game, or nothing.

41. On information and belief, the centralized gaming server(s) of the Accused Games are configured to access the memory module and communicate the plurality of images corresponding to the at least one random game outcome to the at least one network access device. For example, the mobile application for the particular Accused Game is first downloaded from the appropriate mobile application store, such as the Apple App Store or Google Play. However, after the mobile app is downloaded and installed, additional graphical assets are downloaded for display to the player, including some that are downloaded contemporaneously with play. At least some of these post-install graphical assets are communicated to the user device from the centralized gaming server(s). NEXRF has been and continues to be damaged by the Defendants' infringement of the '229 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,506,406

### (Against all Defendants)

42. Paragraphs 1 through 41 are incorporated herein by reference.

43. U.S. Patent No. 8,506,406, titled "Network Access Device and Method to Run a Game Application," was duly and lawfully issued by the United States Patent and Trademark Office on August 13, 2013. A true and correct copy of the '406 patent is attached as Exhibit 2.

44. NEXRF is the owner by assignment of all rights, title, and interest in the '406 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

45. The '406 patent is valid and enforceable.

46. Defendants infringe one or more claims of the '406 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '406 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Games in

violation of 35 U.S.C. Section 271(a)-(b). The Accused Games satisfy all limitations of the asserted claims of the '406 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

47. Defendants had actual knowledge of the '406 patent or were willfully blind to its existence and their infringement no later than the filing of this action. Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

48. Defendants directly infringe the asserted claims of the '406 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a). Defendants directly infringe the asserted claims of the '406 patent, at minimum, through use of the system for testing. Claim 1 of the '406 patent is exemplary and recites:

> 1. A system to run a gaming application on a network access device, comprising:
> the network access device; and
> a remote gaming system including a verification system;
> the network access device configured to transmit user identification information and security information to the verification system;
> the network access device configured to receive an acknowledgement from the verification system indicating that the user identification information and security information are valid;
> the network access device configured to receive a game input from a user of the network access device and transmit the game input to the remote gaming system;
> the remote gaming system configured to receive the game input and generate a random game output, the remote gaming system further configured to associate an image ID with the random game output and select one or more images associated with the image ID for encoding and broadcasting to the network access device;
> the network access device configured to receive a plurality of broadcast images generated by the remote gaming system.

49. Defendants infringe claim 1 for at least the following reasons:

50. To the extent the preamble is limiting, the Accused Games as operated include a system to run a gaming application on a network access device.

51. On information and belief, the Accused Games, in operation, include a network access device such as a phone or laptop.

52. On information and belief, the Accused Games include a remote gaming system including a verification system. For example, the Accused Games allow and/or require a user to register for a user account and log into a central gaming server system in order to play the games.

53. On information and belief, the Accused Games include that the network access device is configured to transmit user identification information and security information to the verification system. For example, the Accused Games when operated on a user device collect and transmit registration data that may include the player's name, user name, password, and other registration data to the verification system.

54. On information and belief, the Accused Games include that the network access device is configured to receive an acknowledgement from the verification system indicating that the user identification information and security information are valid. For example, the verification system of the central gaming server system sends a message to the Accused Game application running on a user device that the login information is verified, and the login is allowed to complete and the user to play the game.

55. On information and belief, the Accused Games include that the network access device is configured to receive a game input from the user and transmit the game input to the remote gaming system. For example, an Accused Game on a user device will receive an input, such as a touch input, of a user selecting an action, such as touching or clicking the spin button in the game. This input is then transmitted by the Accused Game application to the remote gaming server system and the inputted command is executed, such as by initiating the play of the game.

56. On information and belief, the Accused Games include that the remote gaming system is configured to receive the game input and generate a random game output, the remote gaming system further configured to associate an image ID with the random game output and select one or more images associated with the image ID for encoding and broadcasting to the network access device. For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes for players playing the game. These game outcomes will be generated after the player initiates play, which is communicated to the gaming server from the Accused Game application running on the user device. These game outcomes are generated using a RNG. The central gaming server system

further associates the generated game outcome with an image ID, such as a celebratory graphic for a winning spin, or the icons on the virtual slot reels. These images are then encoded and transmitted to the user device over the internet.

57. On information and belief, the Accused Games include that the network access device is configured to receive a plurality of broadcast images generated by the remote gaming system. The Accused Game application running on the user device includes instructions sufficient for the user device to be configured to receive the broadcast images from the central gaming server system and display one or more of those images to the user.

58. Defendants directly infringe the asserted claims of the '406 patent because they use the system as a whole and put it into service. Defendants or their agents supply every component of the system except the user device, to the extent that is a required element of an asserted claim. Further, Defendants' applications on a user device control all claimed components, configurations, functions, and processes, which constitutes sufficient control over the user device.

59. In addition, Defendants are vicariously liable for the actions of its customers because the only action required of a user is to play the Accused Game. Defendants condition the benefits of playing the game upon the act of the player to actually play the game. In other words, the player can never win if they do not play. Further, Defendants exercise the requisite control over the manner and/or timing of the user's actions as it relates to the user's network access device. Specifically, the player cannot play the game without running Defendants' application, and further restrictions exist such as the requirement of an internet connection to Defendants' servers, logging in to a user account, and other restrictions.

60. Additionally or alternatively, Defendants indirectly infringe the asserted claims of the '406 patent through its users' actions. Defendants contributorily infringe the asserted claims of the '406 patent by making available for use the Accused Games, knowing the same to be especially made or especially adapted for use in infringing the '406 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. The play of the Accused

Game is an act of infringement, and so the Accused Games are not staple articles of commerce or otherwise capable of substantial noninfringing use.

61. Additionally or alternatively, Defendants actively, knowingly, and intentionally induce the infringement of the asserted claims of the '406 patent by actively encouraging its users to use the Accused Games by playing them. Defendants know, at least as of the date of this Complaint, that their actions will induce users of the Accused Games to directly infringe the asserted claims of the '406 patent. Those users then directly infringe the asserted claims of the '406 patent. For example, Defendants provide instructions to users on how to access the Accused Games and play the Accused Games and otherwise instructing and encouraging players to play the Accused Games, an act which directly infringes the asserted claims of the '406 patent.[5]

62. NEXRF has been and continues to be damaged by the Defendants' infringement of the '406 patent.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,646,454

**(Against all Defendants)**

63. Paragraphs 1 through 62 are incorporated herein by reference.

64. U.S. Patent No. 9,646,454, titled "Networked Gaming System and Method," was duly and lawfully issued by the United States Patent and Trademark Office on May 9, 2017. A true and correct copy of the '454 patent is attached as Exhibit 3.

65. NEXRF is the owner by assignment of all rights, title, and interest in the '454 patent, including the right to bring this suit for past and future damages and/or injunctive relief.

66. The '454 patent is valid and enforceable.

67. Defendants infringe one or more claims of the '454 patent, including but not limited to claim 1, directly and/or indirectly via induced infringement and/or contributory infringement. Defendants infringe the asserted claims of the '454 patent by making, using, importing, selling for importation, and/or selling after importation into the United States at least the Accused Games in

---

[5] *See, e.g.,* Exhibit 5, *DoubleDown Interactive* page at https://www.doubledowninteractive.com/double-down/ (last visited 12/20/2020); Exhibit 6, *DoubleU Games* page at https://doubleucasino.com/ (last visited 12/20/2020); .

COMPLAINT - 13

violation of 35 U.S.C. Section 271(a)-(b). The Accused Games satisfy all limitations of the asserted claims of the '454 patent at least when the respective game is made available for download and play by a user, or after being installed by a user, or after being installed and played by a user.

68. Defendants had actual knowledge of the '454 patent or were willfully blind to its existence and their infringement no later than the filing of this action. Defendants' ongoing infringement is willful and deliberate, entitling NEXRF to enhanced damages.

69. Defendants directly infringe the asserted claims of the '454 patent by making, using, offering to sell, or selling the Accused Games in the United States in violation of 35 U.S.C. Section 271(a). Claim 1 of the '454 patent is exemplary and recites:

> 1. A networked gaming system comprising:
> a user identification received by at least one network access device that is compared with registration data in a registration database, wherein a player is provided access to a game when the user identification matches the registered player data;
> a transactional component that charges the registered player at least one credit for a game outcome;
> a centralized networked gaming module that performs game operations and generates at least one random game output by random generation at the networked gaming module;
> the networked gaming module associates the at least one random game output with an image ID; and
> the networked gaming module communicates one or more images corresponding to the image ID to the network access device.

70. Defendants infringe claim 1 for at least the following reasons:

71. To the extent the preamble is limiting, the Accused Games comprise a networked gaming system.

72. On information and belief, the Accused Games include a user identification received by at least one network access device that is compared with registration data in a registration database, wherein a player is provided access to a game when the user identification matches the registered player data. For example, the Accused Games allow or require a user to log onto the game by providing a username and password, a Facebook account, or similar. This constitutes user identification information that is compared by the game system to the database of registered users, and when an appropriate match is found the player is allowed to log in and access the game.

73. On information and belief, the Accused Games include a transactional component that charges the registered player at least one credit for a game outcome. For example, the Accused Games that include a slot embodiment require a credit wager of some amount, which is often selectable within a range by the player. These credits may represent actual currency or not, depending on the particular game. Once the slot machine reel is spun and so the game initiated, the initial wager of credit(s) is deducted from the player's store of credits.

74. On information and belief, the Accused Games include a centralized networked gaming module that performs game operations and generates at least one random game output by random generation at the networked gaming module. For example, the Accused Games include one or more servers that players connect to in order to play the games, and which generate at least some game outcomes for players playing the game. These game outcomes are generated using a RNG.

75. On information and belief, the Accused Games' centralized networked gaming module further associates the at least one random game output with an image ID. For example, in the Accused Games a winning game outcome will have celebratory graphic media for display to the player. The appropriate celebratory graphic media is associated to the game outcome by the centralized gaming server of the Accused Games.

76. On information and belief, the Accused Games' networked gaming module communicates one or more images corresponding to the image ID to the network access device. For example, the Accused Games transmit the appropriate celebratory graphic media for the particular game outcome to the player's device over normal internet protocols.

77. Defendants directly infringe the asserted claims of the '454 patent because they use the system as a whole and put it into service. Defendants or their agents supply every component of the system except the user device, to the extent that is a required element of an asserted claim. Further, Defendants' applications on a user device control all claimed components, configurations, functions, and processes, which constitutes sufficient control over the user device.

78.     In addition, Defendants are vicariously liable for the actions of its customers because the only action required of a user is to play the Accused Game.  Defendants condition the benefits of playing the game upon the act of the player to actually play the game.  In other words, the player can never win if they do not play.  Further, Defendants exercise the requisite control over the manner and/or timing of the user's actions as it relates to the user's network access device.  Specifically, the player cannot play the game without running Defendants' application, and further restrictions exist such as the requirement of an internet connection to Defendants' servers, logging in to a user account, and other restrictions.

79.     Additionally or alternatively, Defendants indirectly infringe the asserted claims of the '454 patent through its users' actions.  Defendants contributorily infringe the asserted claims of the '454 patent by making available for use the Accused Games, knowing the same to be especially made or especially adapted for use in infringing the '454 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  The play of the Accused Game is an act of infringement, and so the Accused Games are not staple articles of commerce or otherwise capable of substantial noninfringing use.

80.     Additionally or alternatively, Defendants actively, knowingly, and intentionally induce the infringement of the asserted claims of the '454 patent by actively encouraging its users to use the Accused Games by playing them.  Defendants know, at least as of the date of this Complaint, that their actions will induce users of the Accused Games to directly infringe the asserted claims of the '454 patent.  Those users then directly infringe the asserted claims of the '454 patent.  For example, Defendants provide instructions to users on how to access the Accused Games and play the Accused Games and otherwise instructing and encouraging players to play the Accused Games, an act which directly infringes the asserted claims of the '454 patent.[6]

81.     NEXRF has been and continues to be damaged by the Defendants' infringement of the '454 patent.

---

[6] Ex. 5; Ex. 6.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

A. Judgment in NEXRF's favor and against Defendants on all causes of action alleged herein;

B. Damages in an amount to be determined at trial, including trebling of all post-filing damages awarded with respect to infringement of the patents in suit;

C. Judgment that this is an exceptional case;

D. Costs of suit incurred herein;

E. Prejudgment interest;

F. Attorneys' fees and costs; and

G. Such other and further relief as the Court may deem to be just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, NEXRF respectfully demands a trial by jury on all issues triable by Jury.

DATED this 31st day of December, 2020.

Respectfully submitted,

**FOLIO LAW GROUP, PLLC**

s/Michael Saunders

Michael Saunders (WA Bar No. 51550)
Cristofer Leffler (WA Bar No. 35020)
Folio Law Group, PLLC
14512 Edgewater Ln NE
Lake Forest Park, WA 98155
Telephone: 206.512.9051
Email: mike.saunders@foliolaw.com
cris.leffler@foliolaw.com
*Counsel for Plaintiff*

ADAM YOWELL
FisherBroyles, LLP
Nevada Bar No. 11748 (*Pro Hac Vice pending*)
5470 Kietzke Ln
Suite 300
Reno, NV 89511
Telephone: (775) 230-7364
*Counsel for Plaintiff*

Alastair J. Warr
IN Bar #15873-49 (*Pro Hac Vice forthcoming*)
FisherBroyles, LLP
203 N. LaSalle St., #2100
Chicago, IL 60601
Telephone: 317.407.5260
Email: Alastair.Warr@fisherbroyles.com
*Counsel for Plaintiff*

COMPLAINT - 18